UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PAUL HOTARD | CIVIL ACTION |
| VERSUS | NO. 20-1877 |
| AVONDALE INDUSTRIES, INC. ET AL | SECTION "L" (1) |

**ORDER AND REASONS**

Before the Court are three motions. Patricia Hotard filed two 12(b)(6) motions to dismiss indemnity and defense claims filed by Huntington Ingalls Inc. ("Avondale") and Hopeman Interests (made up of Hopeman Brothers Inc. and Liberty Mutual Insurance Company), respectively. R. Docs. 588, 590. Avondale and Hopeman Interests filed oppositions. R. Docs. 606, 607. Hotard replied to both oppositions. R. Docs. 610, 611. Oral argument on the motions was heard on April 24, 2024. R. Doc. 618. Additionally, Hopeman Interests filed a motion for declaratory judgment against Hotard. R. Doc. 594. Hotard opposes the motion and Hopeman Interests replied. R. Docs. 608, 609. Considering the briefing, applicable law, and oral argument, the Court rules as follows.

I.     BACKGROUND

The parties are familiar with the extensive factual history of this case and the Court will not repeat it here. *See* this Court's November 28, 2023 Order and Reasons, R. Doc. 520 for a full history. For the purpose of this motion, the relevant background is as follows.

This litigation arises from Decedent Paul Hotard's alleged exposure to injurious levels of asbestos and asbestos-containing products designed, manufactured, sold and/or supplied by several

1

Defendant companies while employed by Avondale. R. Doc. 1-2 at 2. Mr. Hotard allegedly was diagnosed with mesothelioma on or around April 2020. R. Doc. 166-2 at 2; R. Doc. 181-1 at 2. His alleged occupational exposure to asbestos-containing products at Avondale was a result of a failure by the company and its executive officers "to provide a safe place in which to work free from the dangers of respirable asbestos-containing dust." R. Doc. 166-2 at 5. Decedent, a citizen of Kentucky, brought Louisiana state law negligence and strict liability tort claims in state court against Avondale, Hopeman Interests and a number of other defendants. R. Doc. 1-2. Avondale removed the case to this District on the basis of diversity jurisdiction. On September 14, 2020, Mr. Hotard filed the First Amended Complaint adding in a number of additional defendants including SeaRiver Maritime Inc. and ExxonMobil Corporation (collectively, "SeaRiver"), as successors-in-interest to the vessel owner. R. Doc. 60.

On or about September 21, 2021, Paul Hotard, the decedent, died allegedly as a result of malignant mesothelioma. R. Doc. 233. His widow, Patricia Hotard, filed an amended complaint as the independent administratrix of decedent's estate. *Id.*

Hopeman Interests entered a settlement with Plaintiffs on April 8, 2021. R. Doc. 191. On January 26, 2022, Chief Judge Brown, who was originally assigned to the case, granted Avondale and Lamorak's motion for summary judgment, holding that "the 'date of disease manifestation' theory of accrual governs Plaintiff's claim, rendering the post-1972 version of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901, *et seq.* applicable to this case. Accordingly, the Court dismissed with prejudice Plaintiff's state law tort claims against Avondale. *Id.* at 36.

On January 6, 2023, trial dates for the matter were continued pending the Fifth Circuit's opinion in *Barrosse v. Huntington Ingalls, Inc.*, 70 F.4th 315 (5th Cir. 2023), which was decided

on June 12, 2023. As a result, Avondale once again became a defendant in this suit and the Court issued an order that defendants file or amend any third-party complaint by July 28, 2023. R. Doc. 463. On November 8, 2023, Avondale entered a settlement with Hotard. R. Doc. 510.

At a telephone status conference held on December 4, 2023, Hotard indicated to the Court that she had reached a resolution with all parties—leaving only contractual and indemnity claims between the defendants to be resolved. R. Doc. 528. At a January 31, 2024 telephone conference, the Court granted the Hopeman Interests' motion and reset trial dates to August 12, 2024. R. Doc. 546. On February 22, 2024, Avondale filed the instant motion. R. Doc. 557.

In February 2024, Hopeman Interests requested leave to file a third-party demand against Hotard for indemnity for claims pursuant to their settlement agreement. Similarly, Avondale moved the Court for leave to file an amended crossclaim against Hotard requesting the same relief. This Court granted both motions and thereby bringing Hotard back into the suit but now as a defendant against these parties.

Presently, before the Court are two motions filed by Hotard, in which she seeks dismissal of those claims and a motion for declaratory judgment filed by Hopeman Interests.

## II. LAW AND ANALYSIS

The Court will first address Hotard's 12(b)(6) motions.

### a. Hotard's 12(b)(6) Motion Against Hopeman Interests

In her motion, Hotard seeks dismissal of Hopeman Interests' indemnity claim against her arising from SeaRiver's third party claims against Hopeman Interests. R. Doc. 588. She argues that while she entered into a settlement agreement with Hopeman Interests in 2021, that agreement only intended to compromise her claims with Hopeman Interests. She however argues that it did not include indemnity for any other claims or obligations that may be asserted against Hopeman

Interests by SeaRiver because their agreement does not expressly say so. Accordingly, she avers that the settlement agreement does not cover SeaRiver's defense and indemnity claims against Hopeman Interests, which arise out of a separate contract to which Hotard was not a part of. Relevant portions of the Hopeman Interests-Hotard agreement provide:

> [Hotard] grant[s] full release and discharge to [Hopeman Interests] . . . and agree to hold them harmless, to indemnify and to defend them, up to the amount of the settlement, from any and all liability, judgments, claims. . .of whatever nature or kind which in any way may arise out of or are connected to all known or unknown personal injuries, results diseases or consequences (including future death) incurred by [Mr. Hotard] which may have resulted from . . . mesothelioma. . .whether past, present or future, without limitation, including but not limited to all damages, pain and suffering, costs, expenses . . .compensatory or punitive (exemplary) damages, attorney fees, costs and expenses, whether arising at law . . .in contract (civil or maritime), or under any contract. . . or cause of action based on a claim not asserted in this litigation on account of or in any way connected, either directly or indirectly, to the asbestos exposure, resulting injury(ies) and death of [Mr. Hotard] during his exposure to asbestos through asbestos-containing products in any way associated with [Hopeman Interests], whether now known or hereafter discovered.

*Id.* at 8. Additionally, Hotard argues that the settlement agreement specifically reserved claims against all other parties, apart from releasing Hopeman Interests. For support, she directs the Court's attention to this provision of the Hopeman Interests-Hotard Agreement:

> [Hotard] specifically reserve[s] all rights, claims, demands, and causes of action, both present and future, they have or may have against all parties. . . not released herein whether named, unnamed, or to be named.

*Id.* at 9. Hotard argues that interpreting the settlement agreement to hold Hotard accountable for Hopeman Interests' indemnity to SeaRiver leads to absurd consequences because it would be "functionally equivalent" to Hotard releasing SeaRiver. Yet, because Hotard expressly reserved its claims against SeaRiver in the settlement agreement, she argues the Court should not read the

4

agreement in this manner as it would render her reservation of such claims meaningless.

In opposition, Hopeman Interests first argues that Hotard's motion should be denied because she knowingly pursued a claim against SeaRiver—that was related to Hopeman Interests—even though she already settled claims with Hopeman Interests. R. Doc. 606 at 1. Hopeman Interests further argues that prior to settling with Hotard, it was never put on notice that she intended to pursue a claim against another party for Hopeman Interests' actions. *Id.* at 3. Hopeman Interests avers that the language of the settlement agreement includes indemnity for SeaRiver's defense and contractual indemnity claims against it because otherwise Hotard may be given double recovery for the same conduct. Moreover, Hopeman Interests avers that Hotard should have included a carve-out provision in their settlement agreement, which prevented recovery from other parties for conduct arising out of Hopeman Interests' actions. Accordingly, they argue that they have alleged a plausible claim against Hotard and that the Court should deny her motion. *Id.* at 11.

In reply, Hotard reiterates her earlier arguments and maintains that she did not expressly agree to indemnify Hopeman Interests for SeaRiver's indemnity claims against it. R. Doc. 611.

### b. Hotard's 12(b)(6) Motion Against Avondale

In this motion, Hotard raises the same arguments in her other 12(b)(6) motion, but this time against Avondale. R. Doc. 590. In early November 2023, Avondale and Hotard entered into a settlement agreement. R. Doc. 510. Relevant portions of that agreement are as follows:

> Hotard. . . agrees to indemnify [Avondale] and hold [it] harmless from any and all further liability, loss, damage, claims, cross-claims, third-party complaints. . . or other legal actions . . . for contribution, and expenses arising out of Released Claims, and if necessary in order to hold [Avondale] harmless, to satisfy on [its] behalf any judgment against [Avondale] arising in any way out of the aforesaid claims . . .
>
> [Hotard] agrees to be responsible for all costs to defend [Avondale], including the payment of all attorney's fees, court costs, . . . and/or

5

> other expenses, in any action, claims, crossclaims, third-party complaints. . . or other legal action by any person, firm or other entity resulting from or arising out of the Released Claims.

R. Doc. 590-2 at 3-4. Thus, she argues that Avondale's indemnity claim against her should be dismissed for all the same reasons as stated above against Hopeman Interests.

In opposition, Avondale raises similar arguments as Hopeman Interests. R. Doc. 607. It further avers that Hotard expressly agreed to indemnify Avondale for SeaRiver's claims against it because the Avondale-Hotard agreement additionally defines Released Claims as:

> It is further understood and agreed that the aforementioned provisions are intended to release and forever discharge [Avondale] from any and all liability arising out of, or on account of, or in any way growing out of diseases … suffered by [Mr. Hotard] attributable to exposure to and/or inhalation of Irritants for claims [Hotard] … may now have or may hereafter have.  Such injuries, conditions or diseases include, but are not limited to: . . . mesothelioma . . .The phrase "any and all liability" in this paragraph includes, but is not limited to . . .breach of contract, detrimental reliance, unjust enrichment. . . Releasor further understands that she is releasing all such claims, causes of action or expenses, regardless of whether the claims, causes of action or expenses have accrued, are presently being accrued, or may accrue in the future.

R. Doc. 590-2 at 3-4. Moreover, Avondale argues that their agreement specifically discusses Hotard's strict liability claims against SeaRiver and releases Avondale from being potentially liable to SeaRiver for such actions.[1] For all the foregoing reasons, Avondale requests that this Court deny Hotard's 12(b)(6) motion.

In reply, Hotard stresses her earlier arguments and maintains that she did not expressly agree to indemnify Avondale's for SeaRiver's indemnity claims against it. R. Doc. 611.

### c. Discussion on Hotard's 12(b)(6) Motions

---

[1] The agreement provides that: "[Hotard]'s counsel are further authorized by [Hotard], and do hereby release, with prejudice, all strict liability claims asserted by [Hotard] against the Released Parties and all other parties to this litigation, including but not limited to SeaRiver Maritime, Inc. and Exxon Mobil Corporation." R. Doc. 590-2 at 3.

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556. A claim is plausible on its face when the plaintiff has pled facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 570. Although a court must liberally construe the complaint in light most favorable to the plaintiff, accept the plaintiff's allegations as true, and draw all reasonable inferences in favor of the plaintiff, *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996), courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions*." Arias-Benn v. State Farm Fire & Cas. Co.*, 495 F.3d 228, 230 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

"While a court is generally limited to factual allegations contained in the pleadings when ruling on a Rule 12(b)(6) motion to dismiss, a court may consider documents attached to a defendant's motion to dismiss 'if they are referred to in the plaintiff's complaint and are central to her claim'" *Moton v. Underwriters at Lloyd's London*, No. 22-3634, 2023 WL 6804365, *1, *2 (E.D. La. Sept. 7, 2023) (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

Presently, the crux of the motions before the Court are whether the provisions in the Hopeman Interests-Hotard and Avondale-Hotard agreements provide that Hotard will indemnify Hopeman Interests and Avondale for their alleged contractual indemnity obligations to SeaRiver. Under Louisiana law, the Civil Code provides that "[i]nterpretation of a contract is the

7

determination of the common intent of the parties." La. Civ. Code ann. art. 2045. "When the words of a contract are clear, explicit and lead to no absurd consequence, no further interpretation may be made in search of the parties' intent." *Baker v. Chrysler Corp.*, No. 92-4250, 1993 WL 210515 at *1 (E.D. La. 1993) (citing La. Civ. Code. art. 2046; *Huggs, Inc. v. LPC Energy, Inc.*, 889 F.2d 649, 651-52 (5th Cir. 1989)). Further, "[t]he words of a contract must be given their generally prevailing meaning." La. Civ. Code art. 2047. Courts may not create ambiguities where none exist. *Esplanade Oil & Gas v. Templeton Energy Income*, 889 F.2d 621, 624 (5th Cir. 1989).

Regarding contracts of indemnity, the Fifth Circuit holds that such contracts should be interpreted to cover liabilities that "reasonably appear" to have been contemplated by the parties. *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981). Contractual indemnity provisions, however, "should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within indemnity coverage." *Id.* The Fifth Circuit has further held that such contracts "need not contain any special words to evince an intention to create a right of indemnity for indemnity of independent contractual liabilities," but "that it must clearly express such a purpose." *Id.* at 334.

The Court begins its discussion by focusing the parties on what needs to happen for Hotard to even be possibly responsible to Hopeman Interests and Avondale for defense and indemnity costs pursuant to their respective settlement agreements. At the start of this matter, Hotard's claim against SeaRiver was broadly based on two theories of liability (1) SeaRiver's alleged negligence and (2) SeaRiver's strict liability derivative of its ownership of the vessels upon which asbestos-containing products were installed by other defendants including Avondale and Hopeman Interests. This Court has previously found that SeaRiver is not entitled to defense and indemnity

8

costs from Avondale and Hopeman Interests for Hotard's negligence claim against it. R. Doc. 602. Thus, SeaRiver may only recover defense and indemnity costs from Avondale and Hopeman Interests with regard to Hotard's strict liability claim against SeaRiver. To do so, it must first prove that it is potentially liable to Hotard for such a claim.

As discussed in this Court's earlier order, to demonstrate potential liability, SeaRiver must establish that Hotard's claim against it based on strict liability was not frivolous, that its settlement with Hotard was reasonable, untainted by fraud or collusion, and that SeaRiver settled with Hotard under a reasonable apprehension of liability. R. Doc. 602; *Chevron Oronite Co., L.L.C. v. Jacobs Field Servs. N. Am., Inc.*, 951 F.3d 219, 227 (5th Cir. 2020). Such a determination has yet to be made in this matter and is currently not before the Court.

That determination is crucial because if SeaRiver meets its burden and demonstrates a viable theory of strict liability, then that may trigger a duty on behalf of Hotard to indemnify Hopeman Interests and Avondale under their respective settlement agreements. But if SeaRiver fails to meet this burden, then Avondale and Hopeman Interests claims for indemnity from Hotard will become moot. Bearing this in mind, the Court presently finds that the allegations pled by Avondale and Hopeman Interests survive the 12(b)(6) stage. With that being said, the Court also finds that Hotard reserves the right to move for summary judgment on this issue if it is later determined that SeaRiver does not successfully demonstrate its potential liability under the circumstances described above.

At oral argument, all parties agreed that Hotard's obligation to indemnify Avondale and Hopeman Interests is triggered only if the parties expressly agreed to such a duty. However, much controversy still remains as to whether Hotard's indemnity obligation extends to SeaRiver's claims against Avondale and Hopeman Interests.

Accepting Avondale's allegations as true, which the Court must do at this stage of the proceeding, the Court finds that Avondale has raised a plausible claim that the Hotard-Avondale agreement triggers Hotard's duty. *Baker,* 75 F.3d at 196. At oral argument, Avondale alleged that their agreement states Hotard agreed to indemnify Avondale against possible cross-claims alleged against it. Avondale further argued that SeaRiver has asserted a cross-claim against it thereby activating Hotard's obligation to Avondale under their agreement. This allegation paired with other language in the Avondale-Hotard agreement lead the Court to find that Avondale's right to relief raises beyond a speculative level and thus, it denies Hotard's 12(b)(6) motion against Avondale. *Twombly*, 550 U.S. at 556.

Similarly, the Court finds that Hopeman Interests has pled sufficient factual matter to support its claim for relief against Hotard. *Iqbal*, 556 U.S. at 678. While the Hopeman Interests-Hotard agreement does not contain the same "cross-claim" language found in the Avondale-Hotard agreement, Hopeman Interests directs this Court to a number of other provisions in their agreement that may plausibly trigger Hotard's indemnity duty. R. Doc. 588 at 8. Accepting these allegations as true, the Court agrees. *Baker,* 75 F.3d at 196. Thus, the Court also denies Hotard's 12(b)(6) motion against Hopeman Interests.

The Court stresses that while Avondale and Hopeman Interests' allegations survive this stage of litigation, more investigation is needed to determine whether Hotard expressly agreed to indemnify Avondale and Hopeman Interests for SeaRiver's claims against them, especially when reading the settlement agreements as a whole.

### d. Hopeman Interests' Motion for Declaratory Judgment

Next, the Court addresses Hopeman Interests' motion for declaratory judgment. In that motion, they seek a judicial declaration that Hotard owes Hopeman Interests a duty of defense/

10

indemnity pursuant to their agreement discussed above. R. Doc. 594. In opposition, Hotard argues that she did not agree to such a duty thus creating an "actual controversy" and asks the Court to consider her arguments in her 12(b)(6) motion when ruling on this motion. R. Doc. 608. In reply, Hopeman Interests reiterates its earlier arguments and similarly asks the Court to consider its arguments raised in its opposition to Hotard's earlier motion. R. Doc. 609.

"The Declaratory Judgment Act provides that, '[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126, 127 (2007) (quoting 28 U.S.C § 2201(a)). "When considering a declaratory judgment action, a district court must engage in a three-step inquiry." *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). The court must ask (1) "whether an 'actual controversy' exists between the parties" in the case; (2) whether it has authority to grant declaratory relief; and (3) whether "to exercise its broad discretion to decide or dismiss a declaratory judgment action." *Id.* The statute's requirement of a "case of actual controversy" refers to an Article III case or controversy. *MedImmune, Inc.*, 549 U.S. at 126, 127.

For all the reasons stated in the previous section of this order, the Court finds that an "actual controversy" exists as to whether the Hotard-Hopeman Interests agreement requires Hotard to indemnify Hopeman Interests for SeaRiver's claims against it. Accordingly, the Court need not delve into this three-step inquiry further and will deny Hopeman Interests' motion.

### III. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Hotard's 12(b)(6) Motions, R. Doc. 588 and R. Doc. 590, are **DENIED,** without prejudice. Hotard reserves the right to re-urge the arguments raised in its

11

motions if SeaRiver does not successfully demonstrate that it is entitled to indemnity from Hopeman Interests and/or Avondale pursuant to the strict liability claim. **IT IS FURTHER ORDERED** that Hopeman Interests' Motion for Declaratory Judgment, R. Doc. 594, is **DENIED**.

New Orleans, Louisiana, this 13th day of May, 2024.

_____
United States District Judge